

ENTERED
08/05/2020

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | |
| LUTHER WAYNE SMITH, | Chapter 7 |
| Debtor. _____/ | Case No.: 19-34093 |
| KAPITUS SERVICING, INC, AS SERVICING AGENT FOR KAPITUS, LLC, | |
| Plaintiff, v. | Ad. Pro. No. 19-03655 |
| LUTHER WAYNE SMITH, | |
| Defendant. _____/ | |

## AGREED JUDGMENT

Before the Court is this agreed judgment (the "Agreed Judgment") entered into by and between Kapitus Servicing, Inc, as servicing agent for Kapitus, LLC ("Kapitus" or the "Plaintiff") and Luther Wayne Smith, the defendant ("Smith" or the "Defendant" or the "Debtor" and together with Kapitus, the "Parties" and each individually, a "Party"). Based on the terms of this Agreed Judgment and the agreement of the parties set forth herein, this Court hereby:

FINDS AND DETERMINES:[1]

     A.     On February 20, 2019, Debtor executed an application for a merchant advance with Plaintiff (the "Application"). A true and correct copy of the Application is attached to the

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. *See* Fed. R. Bankr. P. 7052.

Complaint [ECF 1] as **Exhibit A**. In the Application, Debtor represented that the funding request was "for business and not consumer purposes."

B.  Subsequently, on or about February 22, 2019, Smith, in his capacity as officer/owner/director/member/manager of Rebirth Body Shapers, LLC, d/b/a Rebirth Body Shapers ("Rebirth" or the "Merchant"), and in his individual capacity as guarantor, executed a Future Receivables Factoring Agreement (ACH) (hereinafter the "Agreement") with Kapitus LLC and its authorized sub-servicing agent, Kapitus. A true and correct copy of the Application is attached to the Complaint as **Exhibit B**.

C.  Pursuant to the Agreement, Plaintiff purchased $165,132.00 of future accounts, monetary payments, and other general receivables generated in the course of Rebirth's business operations (the "Receivables"). Contemporaneously with the execution of the Agreement, and as further security, the Debtor executed a personal guaranty (the "Guaranty"), guaranteeing Rebirth's full performance of all terms and obligations under the Agreement. A true and correct copy of the Agreement (which includes the Guaranty) is attached to the Complaint as **Exhibit B**. Under the terms of the Agreement, Kapitus Servicing is designated as Kapitus LLC's general agent to service and enforce the Agreement, including enforcement through legal action.

D.  On or about February 26, 2019, Plaintiff paid Debtor $118,800.00 as the agreed purchase price for the Receivables. To allow Plaintiff to collect its purchased Receivables, the Agreement required Rebirth to use only a single, specified depositing account to deposit all Receivables collected by Rebirth (the "Account"), which was designated by the parties in the Agreement and fully accessible to Plaintiff. *See* **Exhibit B** to the Complaint, Agreement, p. 1 & pp. 3–4 §§ 1.1, 2.7. From the Account, the Agreement entitled Plaintiff to collect 12.7% of the

batch amount of Debtor's collected receivables via Automated Clearing House ("ACH") in the weekly amount of $3,179.00 through debits from the Account. *See id.*, pp. 1, 4, §2.7.

E. To avoid disruption, the Agreement prohibited changes to the Account or the designation of the deposit account except with Plaintiff's express written consent. *See id.* at p. 3 §1.1.

F. In addition to the above terms, by entering the Agreement, Debtor represented, warranted, and covenanted the following:

> **II. REPRESENTATIONS, WARRANTIES AND COVENANTS.** [Debtor] represents, warrants and covenants that as of this date and during the term of the Agreement:
>
> **2.1 Financial Condition and Financial Information.** Its bank and financial statements, copies of which have been furnished to [Kapitus], and future statements which will be furnished hereafter at the discretion of [Kapitus], fairly represent the financial condition of [Debtor] at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of [Debtor]. [Debtor] has a continuing, affirmative obligation to advise [Kapitus] of any material adverse change in its financial condition, operation or ownership. …
>
> **2.7 Daily Batch Out.** [Debtor] will batch out receipts with the Processor on a daily basis. …
>
> **2.9 No Bankruptcy or Insolvency.** As of the date of this Agreement, [Debtor] represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against [Debtor]. [Debtor] further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.
>
> **2.10 Additional Financing. Merchant shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than PURCHASER without PURCHASER's written permission.**

> **2.11 Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of all liabilities, liens and claims, charges, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with or adverse to the interests of [Kapitus].
>
> **2.12 Business Purpose.** [Debtor] is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and [Debtor] is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

*Id.* at pp. 3–4.

G.  In executing the Agreement, Debtor agreed that all information provided in forms and recorded interviews was "true, accurate, and complete in all respects", and the Agreement further emphasized that "**ANY MISREPRESENTATION MADE BY [DEBTOR] OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL FRAUDULENT INDUCEMENT TO OBTAIN FUNDING.**" *See* Agreement at p. 2 (emphasis in original).

H.  In reliance on the representations made by Debtor in the Agreement and the Application, Plaintiff agreed to purchase certain of Rebirth's Receivables, as outlined above.

I.  Almost immediately after its execution by the parties, Debtor and Rebirth materially violated the terms of the Agreement. After making the three payments in March 2019 of $3,179 (totaling $9,537.00), on March 26, 2019, Rebirth's payment to Kapitus was returned due to insufficient funds.

J.  Through May 29, 2019, an additional four payments were returned for insufficient funds,[2] until on June 18, 2019, Kapitus was advised that Rebirth had issued a stop payment on

---

[2] In that period of time, Rebirth made an additional 3 payments, with the last payment on May 14, 2019, in the amount of $3,179.00.

Kapitus' contractual debits. Rebirth has made no subsequent payments to Kapitus, and is in default under the Agreement. As of June 18, 2019, Rebirth owed Kapitus $140,525.00, inclusive of fees for returned payments. Rebirth and Debtor materially breached the Agreement less than 4 months after its execution.

      K.      On July 8, 2019, and as a result of the default and breach of the Agreement, Kapitus brought suit against both Rebirth and Debtor in Virginia State court seeking the amount owed under the Agreement, fees incurred, and for court costs and attorneys' fees in bringing the state court action.

      L.      On July 26, 2019, shortly after Kapitus filed the state court action and before a judgment could be obtained, Debtor declared bankruptcy. In his bankruptcy petition, Debtor placed the value of Rebirth at $0. The filing of this bankruptcy and declaration of no value occurred despite Debtor signing the Agreement, which provides that no bankruptcy or insolvency was anticipated at the time the Agreement was executed. *See* Agreement, p. 4, § 2.9. Debtor seemingly attempts to disclaim any ownership interest in Rebirth in his bankruptcy petition, despite representing himself in the Application as the owner, and despite the company documents provided to Kapitus indicating Debtor as the 100% shareholder of Rebirth. *See, e.g.,* **Exhibit A** to the Complaint, Application.

      M.      Upon information and belief, at the time of the Agreement, and its negotiation, Debtor was behind on payments to one or more creditors. Upon information and belief, the acts and omissions that constitute default of the Agreement were performed or omitted by, at the direction of, or with the consent of Smith.

      N.      In addition to signing the Agreement in his capacity as an officer/owner/director/member/manager of Merchant, Debtor also signed the Agreement as a Guarantor, agreeing to be obligated to all terms of the Agreement. *See* Agreement, pp. 8–9. Indeed,

Debtor personally guaranteed that he would not take any action, nor permit Rebirth to take any action, that would breach the Agreement.

O.  According to Debtor's Schedule D and Schedule E/F filed as part of Debtor's bankruptcy petition on July 25, 2019, Debtor has significant balances totaling more than $375,000 among 13 separate creditors. Debtor's Schedule E/F additionally admits to owing Plaintiff $179,812.50. Although close to accurate, when including the principal, interests, fees, and attorneys' fees and costs, the amount owed to Plaintiff by Debtor totals $182,006.53.

P.  Upon information and belief, Debtor never had any intention to honor the Agreement. Instead, upon information and belief, Debtor intended to use a bank account other than the Account to divert the Receivables proceeds away from Plaintiff at the execution of the Agreement.

Q.  Debtor's conduct and statements demonstrate that Debtor obtained money from Plaintiff by false pretenses, false statements, or actual fraud. Accordingly, the agreed debt owed by Debtor to Plaintiff pursuant to this Agreed Judgment should be determined to be non-dischargeable.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that:

1.  **<u>Non-Dischargeable Judgment.</u>**

Defendant consents, and the Parties hereby agree, to entry of this Agreed Judgment pursuant to 11 U.S.C. §§ 523(a)(2)(A), , in the amount of $36,000 (the "<u>Agreed Judgment Amount</u>"), subject to the additional terms contained herein. Upon execution of this Agreed Judgment, the Parties shall submit it to the Bankruptcy Court for approval and entry. Kapitus shall be entitled to record the Agreed Judgment, but shall not take any action to collect the Agreed Judgment so long as Defendant timely complies with the requirements of this Agreed Judgment.

2. **Payment Schedule and Discount.**

Defendant shall make seventy-two (72) monthly payments of Five Hundred and No/100 Dollars ($500.00) to Kapitus commencing on the first of the month following entry of this Agreed Judgment and continuing on the first day of each month thereafter for an additional seventy-one months (collectively, the "Monthly Payments") until Kapitus shall have received Monthly Payments in the aggregate amount of Agreed Judgment Amount. Upon timely payment of the Agreed Judgment Amount and compliance with all requirements of this Agreed Judgment by Defendant, Kapitus shall record a satisfaction of judgment promptly after written request by Defendant. In the event of an uncured default (defined below), Kapitus shall be immediately entitled to enforce and collect upon the full amount of the Agreed Judgment plus all other amounts due under this Agreed Judgment.

3. **Payment Method.**

Payments shall be made by automated clearinghouse (ACH) draft from a bank account designated by Defendant. Defendant shall submit to Kapitus a check marked "Void" for the account to be debited, with the checking account and routing numbers clearly visible. It is Defendant's responsibility to ensure that sufficient funds are available in the account on the due dates listed above, and that the bank account provided to Kapitus remains open and is not closed without Kapitus's prior written consent. Defendant shall be liable for any fees incurred by Kapitus for returned or rejected payments, which fees shall be the greater of: (i) $75 per returned ACH debit, or (ii) the amount set forth in the Agreement.

4. **Security Interest.**

4. The Debtor hereby grants to Kapitus a lien and security interest in all his personal property to secure the payment of the Agreed Judgment Amount, as such amount may change

pursuant to the terms herein. The security interest and liens granted to Kapitus hereunder shall constitute valid and duly perfected security interests and liens, and this Agreed Judgment shall be sufficient and conclusive evidence of the priority, perfection and validity of all the security interest and lien upon the collateral granted to Kapitus hereunder, and Kapitus shall not be required to file, record or serve any financing statements, mortgages, notice or other documents which may otherwise be required under federal or state law in any jurisdiction or to take any other action (including the taking of possession) to validate or perfect such post-petition security interest and lien. Kapitus is authorized, but not required, to file a new UCC financing statement to continue the perfection of the security interest and lien granted hereunder. If Kapitus shall, in its discretion, elect for any reason to file any such financing statements, mortgages, notices or other documents with respect to such security interest and lien, or take any other action to evidence or perfect same, the Debtor is authorized and required to, or cause to be executed, all such financing statements, deeds of trust, notices or other documents upon Kapitus's request. Kapitus may, in its discretion, file a copy of this Agreed Judgment in any filing or recording office in any jurisdiction in which the Debtor may have an interest in personal property and, in such event, the subject filing officer is authorized and directed to file or record such certified copy of this Agreed Judgment in accordance with applicable law. The Debtor will take all actions, execute, and deliver any and all documents to maintain the perfection of Kapitus' lien and security interest.

  5. **Default.**

In the event the above-referenced Monthly Payments are not timely paid to Kapitus or Defendant fails to comply with any other curable requirement of this Agreed Judgment, Kapitus may give written notice of the default to Defendant by regular U.S. Mail and Defendant will have ten (10) calendar days from the date such notice is deposited in the mail to cure the default (the "10-

Day Notice Period"). Notwithstanding any terms to the contrary contained herein, Defendant shall have the opportunity to cure any curable default under this Agreed Judgment only three (3) times. In the event of a fourth curable default, Kapitus may declare an event of default (the "Event of Default") under this Agreed Judgment and the Parties agree that upon an Event of Default, the Agreed Judgment Amount shall automatically increase to One Hundred Forty Thousand ($140,000) and the full Agreed Judgment Amount shall accelerate and shall be immediately due and owing, provided that Agreed Judgment shall be reduced by the amount of any Monthly Payments already made by the Defendant. Upon an Event of Default, Kapitus may proceed with all legal and equitable remedies available to it, including, without limitation, collecting upon the Agreed Judgment. Kapitus's failure to exercise this option shall not constitute a waiver of the right to exercise such option in the event of a subsequent curable default. Upon giving notice and after expiration of the 10-Day Notice Period with no timely cure being made by Defendant, Kapitus may immediately begin enforcement efforts against Defendant to collect the full amount of the Agreed Judgment plus any post-judgment attorneys' fees, costs, expenses and interest at ten percent (10%) per annum incurred from the date of the Event of Default less any payments received by Kapitus from Defendant under the terms of this Agreed Judgment. Any applicable statutes of limitation to enforce and collect the Agreed Judgment are tolled through the date of the final payment under this Agreed Agreement.

6. **MUTUAL RELEASES**

    A. **By Defendant**

Defendant, on behalf of himself and his respective assigns, successors, administrators, executors, heirs, beneficiaries, agents, officers, directors, employees, affiliates, professionals, trustees, and representatives, hereby releases and forever discharges all known and unknown

claims, rights, demands, damages, actions, causes of action, costs, expenses, and suits of law or in equity which they have held, now hold or hereafter may hold against Kapitus, and each of its respective assigns, successors, administrators, executors, heirs, beneficiaries, agents, officers, directors, employees, affiliates, professionals, attorneys, trustees, and representatives.

    B.  **By Kapitus**

Except as otherwise provided in this Agreed Judgment, and subject to the satisfaction by Defendant of all terms and conditions of this Agreed Judgment, Kapitus on behalf of itself and each of its respective assigns, successors, administrators, executors, agents, officers, directors, employees, affiliates, professionals, trustees, and representatives hereby releases and forever discharges all claims, rights, demands, damages, actions, causes of action, costs, expenses, and suits of law or in equity related to the Agreement which it has held, now holds, or hereafter may hold against Defendant and his assigns, successors, administrators, executors, heirs, beneficiaries, agents, officers, directors, employees, affiliates, professionals, attorneys, trustees, and representatives.

    C.  **Scope of Releases**

Notwithstanding anything to the contrary herein, the Parties understand that the release set forth in this Agreed Judgment shall not apply to the obligations under this Agreed Judgment, and shall have no effect upon any documents or acts necessary to accomplish the terms and intent of this Agreed Judgment.

  7.  **ADDITIONAL TERMS**

The parties agree to the following additional terms:

    A.  **Bankruptcy Court Approval**

This Agreed Judgment shall be effective upon approval by the Bankruptcy Court.

B. **Adequate Consideration.**

The consideration received in connection with this Agreed Judgment is fair, adequate and substantial and consists only of the terms set forth in this Agreed Judgment. The Parties believe in good faith that this Agreed Judgment, is fair to and in the best interests of the Parties.

C. **Counterparts.**

This Agreed Judgment may be executed in counterparts. Copies, facsimiles, or email in .PDF format of the Parties' signatures shall be deemed to be original signatures of this Agreed Judgment and shall have the same force and effect for all purposes as the original.

D. **Further Assurances.**

Each Party agrees to take all reasonable steps necessary to effectuate the terms of this Agreed Judgment.

E. **No Waiver.**

This Agreed Judgment may be amended, changed, or modified only upon a written agreement executed by the Parties. No waiver of any provision of this Agreed Judgment shall be valid unless in writing and signed by the Party against whom such waiver is charged. No waiver of any right a Party may have under this Agreed Judgment shall constitute a waiver of any other, further or additional right that Party may have hereunder.

F. **Choice of Law.**

This Agreed Judgment shall be construed in accordance with and all disputes hereunder shall be controlled by the laws of the State of Texas.

G. **Choice of Venue.**

Any action or proceeding filed, instituted or initiated to enforce, construe, or challenge this Agreed Judgment or any of the terms contained herein shall only be filed or initiated in the Bankruptcy Court or any state or federal court in Harris County, Texas.

H. **No Interpretation of Captions or Headings.**

The captions and headings within this Agreed Judgment are for ease of reference only and are not intended to create any substantive meaning or to modify the terms and clauses either following them or contained in any other provision of this Agreed Judgment.

I. **Neutral Interpretation and Counterparts.**

The Parties shall be deemed to have cooperated in the drafting and preparation of this Agreed Judgment. Hence, any construction to be made of this Agreed Judgment shall not be construed against any Party. This Agreed Judgment may be executed in counterparts and each executed counterpart shall be effective as the original.

J. **Integration/Single Agreement.**

This Agreed Judgment constitutes a single, integrated, written contract expressing the entire understanding and agreement between the Parties. There is no other agreement, written or oral, expressed or implied between the Parties with respect to the subject matter of this Agreed Judgment and the Parties declare and represent that no promise, inducement or other agreement not expressly contained in this Agreed Judgment has been made conferring any benefit upon them or upon which they have relied in any way. The terms and conditions of this Agreed Judgment may not be contradicted by evidence of any prior or contemporaneous agreement, and no extrinsic evidence may be introduced in any judicial proceeding to interpret this Agreed Judgment.

K. **Authority.**

Each Party affirms that he/she is fully capable of executing this Agreed Judgment and understands its contents and further that he/she has legal counsel of his/her own choice or that he/she has had an opportunity to obtain such legal counsel to explain the legal effect of signing this Agreed Judgment. Each Party represents and warrants that he/she has had all terms explained and that by signing below each Party fully understands and agrees to such terms.

L. **Successors.**

This Agreed Judgment shall inure to the benefit of the respective heirs, successors, and assigns of the Parties.

M. **Notice:**

To Kapitus:

Kapitus Funding Source, Inc. d/b/a Kapitus Servicing Inc.
120 West 45th Street, 4th Floor
New York, New York 10036
Attn: Holly Falkowitz
hfalkowitz@kapitus.com

with a copy to:

Charles Rubio
Diamond McCarthy LLP
909 Fannin Street, 37th Floor
Houston, Texas 77010
crubio@diamondmccarthy.com

To Defendant:

Luther Wayne Smith
6407 Star Lake Dr.
Humble, Texas 77396

with a copy to:

William G. Harris
Law Office of William G. Harris

        24 E Greenway Plaza Suite 1705
        Houston, Texas 77046
        Phone: 281-888-5226
        Fax: 281-888-5586
        Cell: 832-264-5579
        wgh@wgharrislaw.com

N. **Attorneys' Fees.**

If any Party institutes legal proceedings over the enforcement of this Agreed Judgment or any provision of it, the prevailing Party shall be entitled to recover from the losing Party all costs, including reasonable and necessary attorneys' fees.

O. **Stipulation and Agreement of Defendant**

Defendant Luther Wayne Smith stipulates to the terms of this Agreed Judgment as part of a settlement of the above-captioned adversary proceeding, and to settle and resolve the claims alleged by Kapitus.

Signed: August 05, 2020

Jeffrey P. Norman
United States Bankruptcy Judge

14

IN WITNESS WHEREOF, each of the Parties has executed this Agreed Judgment on August 4, 2020.

Date: __August__  __4__ , 2020              KAPITUS FUNDING SOURCE, INC. D/B/A KAPITUS

                                                                         _____
                                                                         Charles M. Rubio, as counsel and authorized
                                                                         signatory for Kapitus Funding Source, Inc.


Date: __August__  __4__ , 2020              DEFENDANT

                                                                          /s/ William G. Harris
                                                                         _____
                                                                         William G. Harris as counsel and authorized
                                                                         signatory for Luther Wayne Smith